WEBSTER, Respondent, v. LOEB, Appellant.

**St. Louis Court of Appeals, March 21, 1905.**

1. **ATTORNEY'S FEE: Bill Rendered.** A bill rendered by an attorney for services to his client, but not assented to by the client, will not preclude the attorney from suing for and recovering a greater sum than that for which the bill was rendered, if the services were reasonably worth more.

2. ——: ——: **Admission.** A bill for services rendered by an attorney, though it was not accepted by the client, is admissible in evidence, in an action by the attorney against the client for the value of such services, for the purpose of showing the value plaintiff, himself, put upon his services.

3. ——: ——. The rendition of such a bill cannot be construed as an offer to accept the amount named in it if paid within a reasonable time, in the absence of evidence showing that any such condition or qualification accompanied the bill.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

REVERSED AND REMANDED.

*M. L. Althcimer, Stern & Haberman* for appellant.

The instruction in the nature of a demurrer to the evidence at the close of the case should have been given because the evidence showed that this suit was prematurely brought. Tobin v. McCann, 17 Mo. App. 481; Duryee v. Turner, 20 Mo. App. 34. An attorney cannot

abandon his special contract of employment and sue on a *quantum meruit.* White v. Wright, 16 Mo. App. 551. It is error to submit to the jury an issue of fact concerning which no allegation was made in the pleadings; the trial issues must be within the paper issues. Fulkerson v. Thornton, 68 Mo. 468; Kennedy v. Railroad, 70 Mo. 252; Melvin v. Railroad, 89 Mo. 106; Coontz v. Railroad, 115 Mo. 672, 22 S. W. 572; Slaughter v. Railroad, 116 Mo. 272, 23 S. W. 760; Sedalia v. Mercer, 48 Mo. App. 644.

*Charles W. Holtcamp, George V. Reynolds* for respondent.

Where services are rendered by an attorney, the measure of recovery therefor is the reasonable value thereof in the absence of contract as to the amount to be paid. Brownrigg v. Massengale, 97 Mo. App. 190, 70 S. W. 1103; Wright v. Baldwin, 51 Mo. 269; Encyclopedia of Law and Procedure, vol. 4, p. 994c. Instruction No. 2, asked by plaintiff (and complained of by appellant) that the rendering of a bill for services does not preclude or estop an attorney from subsequently recovering as the value of the services a larger sum than that claimed originally where payment is refused by the client, correctly stated the law. This is the rule laid down in English and American Ency. of Law, 2 Ed., vol. 3, p. 424. Miller v. Beal, 26 Ind. 234; Allis v. Day, 14 Minn. 516; Wilson v. Minn. R. Co., 31 Minn. 481; Williams v. Glemey, 16 N. Y. 389; Hard v. Burton, 63 Vt. 314; Brauns v. Green Bay, 78 Wis. 81.

## STATEMENT.

Noel Loeb, brother of defendant, held the legal title to the undivided two-thirds of a part of lot forty-five, Old Taylor Place, in the city of St. Louis, in trust for the wife of defendant. The equitable title to the whole

of the property was in defendant's wife or her trustee, but the legal title to an undivided one-third was in the heirs of Daniel D. Page. On January 7, 1899, B. F. Webster, an attorney at law and the father of the plaintiff, was employed by J. I. Epstein, acting for Loeb, to quiet the title and have the full legal title vested in Noel Loeb. Such a suit was brought by B. F. Webster, in the St. Louis Circuit Court, but made slow progress. The Loebs reside in Little Rock, Arkansas. In March, or April, 1901, plaintiff, an attorney at law, was in the city of Little Rock on legal business. While he was there the defendant, Joseph Loeb, called upon him and, according to the evidence, employed plaintiff to take hold of the suit and push it to a termination.

Plaintiff testified that he knew his father had brought suit and told Loeb the condition the suit was in and agreed with Loeb that as his father had been paid a retainer fee, he would not demand one of him but would push the suit to a conclusion and at the end render a bill to defendant for his service. Plaintiff's testimony is that he tried the suit and succeeded in obtaining a decree in the circuit court, showing that Noel Loeb was seized in fee of the individual two-thirds of the property and that the defendants held the legal title to the other one-third, in trust, however, for Noel Loeb or defendant's wife; that both parties filed motions for new trial and both prepared the case for appeal to the Supreme Court; that at this stage of the proceedings he rendered a bill to defendant for two hundred and fifty dollars for his services, which the defendant did not accept or pay, and for this reason he asked defendant to be relieved from any further services in the case, and that he withdrew therefrom. The suit is to recover for his professional services. Plaintiff offered evidence tending to show his services were reasonably worth from five hundred to one thousand dollars.

Defendant offered evidence showing that at the time the land suit was brought by B. F. Webster, he and

plaintiff were partners in the practice of law under the firm name of Webster and Webster and occupied the same office in the Wainwright building, in the city of St. Louis, and that the plaintiff at various times after the suit was brought by his father and before March, 1901 appeared in the circuit court on behalf of the plaintiffs to the suit and filed papers and took other steps and offered to prove by writing signed by B. F. Webster that he (B. F. Webster) agreed to prosecute the suit to a successful termination for one hundred dollars and that he had been paid and receipted for the one hundred dollars. This evidence was excluded by the court. Defendant also offered evidence tending to show that plaintiff's services were reasonably worth from three to five hundred dollars.

In respect to the partnership agreement between himself and his father, plaintiff testified as follows:

"While there were certain things that there were an equal division of the fees on, the partnership was principally on office expenses. All matters which he himself secured and were done by himself, he received the entire fee, whatever he had arranged for. If I did any particular part of the work, I generally claimed and got some of that fee, but had nothing to do with the arrangement of that. The legal business of the city of Webster Groves and legal business of the title department of the St. Louis Trust Company, I had nothing to do with those. The business of Armour & Company was exclusively mine, and he had nothing to do with them. The expenses of the office were equally divided and paid by each of us in equal proportions. There were no firm books or accounts kept beyond office expense account, and settlements were made from time to time between us when there was anything in which both of us would have an interest.

"Q. When you had the conversation with Mr. Loeb in Little Rock, Arkansas, about your taking this matter—the case of Loeb against Bacon and others,

what was said with reference to any arrangement then existing? A. He said to me first that he had an arrangement with my father, and I told him that I had heard that he did have, or somebody told me he did have, and he said that he had paid him something and that the case hadn't gone on as fast as he thought it ought to and he wanted me to take hold of it myself; and I told him if I did so it would be on the express condition that I wasn't to be bound by any individual contract that he had with my father, that it would have to be solely with me, and I would have to have the exclusive charge of the litigation; that I had no connection whatever at that time with my father and couldn't undertake to perform contracts which other persons had made. He then still complained about having paid this retainer and wanted to know what I would charge him; and I told him that in view of his having paid that retainer I wouldn't charge him any retainer, but at the end of the services that I would render him a bill for their reasonable value."

Witness further testified that prior to March, 1901, his father ceased to practice law, being totally deaf, and the partnership arrangement between himself and father had been brought to a close; that he told defendant at the time of his employment that he and his father were no longer partners.

On cross-examination defendant testified in respect to plaintiff's employment as follows:

"Q. Was there anything said about a fee at the time? A. Yes, sir; just as I was about to leave he said, 'Mr. Loeb, we have not made any arrangement about a fee in this matter,' and I told him that Mr. Epstein had made some arrangement with his father, the exact terms of which I didn't know; I understood some money had been paid to the senior Webster, but I didn't remember the amount; and then I complained again of the long delay. I told him I was desirous of having the title cleared so as to effect a sale and that I would like to

have it done as speedily as possible, that if he could get the title clear so I could convey a good title to the property the question of a hundred, of two or three hundred dollars wouldn't cut any figure with me; it wasn't a question of money, but a question of having a clear title so I could effect a sale and therefore save taxes and interest and one thing or another. I told him we would not have any difficulty about arranging compensation, that it wasn't a question of money with me, but it was a question of getting the title cleared, the property had been a source of annoyance to me for three or four years, I had been put to big expense by coming up here to St. Louis four or five times a year; to hurry the thing up and I could easily save that three hundred dollars by getting the property out of my hands."

The defendant moved the court to peremptorily instruct that the verdict must be for the defendant. The court refused this instruction, and the issues were submitted to the jury who returned a verdict in plaintiff's favor for nine hundred dollars. Defendant appealed.

BLAND, P. J. (after stating the facts).—1. The uncontradicted evidence is that the partnership of B. F. and J. B. Webster was special and limited in its scope and purpose, and the evidence that was admitted, as well as that which was excluded by the court, shows that B. F. Webster only was employed by Epstein to bring and prosecute the land suit. The evidence further shows that the partnership between the Websters was dissolved prior to the employment of plaintiff, and the evidence of both plaintiff and defendant shows that defendant agreed to pay plaintiff for his services, and it is not denied that plaintiff prosecuted the suit to a final determination in the circuit court under his contract with the defendant. We think, therefore, the issues were narrowed down to the value of plaintiff's service and that the court very properly refused to direct a verdict for the defendant.

2. Complaint is made of the following instruction given on the part of plaintiff:

"3. The jury are instructed that the plaintiff is not precluded from recovering a larger amount by the rendition of the bill for services offered in evidence on behalf of the defendants; that the rendition thereof was an offer to accept the amount stated therein for certain services alleged to have been rendered to defendants therefor, provided the same was paid within a reasonable time; and that if the same was not paid within such a time, then the plaintiff can recover the reasonable value of such services together with the reasonable value of any services thereafter rendered to defendants in the same litigation, if they find for him under the other instructions given."

Martin v. Beal, 26 Ind. 234, was a suit by an attorney on a *quantum meruit* for professional services rendered for the defendant. Prior to the beginning of the suit plaintiff rendered a bill for his services to the defendant. The bill was not accepted or paid and the plaintiff sued for and recovered a sum in excess of the bill. It was contended on the trial that he could recover no more than he claimed in his bill as rendered. In respect to this contention, the court said:

"In our judgment, the demand upon the appellant for payment of a sum named could only be regarded as a proposition to receive that amount in discharge of the debt, and as furnishing evidence to the jury of the value placed by the appellee upon his own services. Payment of the sum demanded would have been an acceptance of the proposition, and no amount having been fixed by previous contract, would have been conclusive upon the parties. In the present case there was evidence from which the jury might find that the proposition was not accepted, and that the services were of greater value than the sum demanded." A like ruling upon like facts was made in Brauns v. City of Green Bay, 78 Wis. 81,

in the case of civil engineer suing for the value of his service.

In Williams v. Glenny, 16 N. Y. 389, it was ruled: "The presentment by a party to his debtor of an account in which he charges a gross sum for services for which he is entitled to be paid *quantum meruit*, there being no payment nor settlement of the account, does not preclude the creditor from showing what the services were reasonably worth, and recovering a larger sum than that at which they were so charged by him."

A bill rendered by an attorney for services to his client but not assented to by the client, was ruled in Wilson v. Railroad, 31 Minn. 481, not to preclude the attorney from suing for and recovering a greater sum than that for which the bill was rendered. The rendition of the bill by plaintiff is some evidence of the value plaintiff himself put upon his services and if it had been accepted by defendant, plaintiff could not recover a greater sum; but it was not accepted and it was competent for the plaintiff to show that his services were of greater value than he had estimated them, and had the instruction so declared the law there would be no occasion to reverse the judgment. But the instruction withdrew from the jury the evidence of the value plaintiff placed upon his own services (shown by the rendition of the bill) and it is for this reason erroneous. It is also erroneous in that it told the jury the rendition of the bill was an offer to accept the amount named in it if paid within a reasonable time, when there is no evidence whatever that any such condition or qualification was indorsed on the bill or stated in the plaintiff's letter transmitting it to the defendant. The contrary appears both by the bill and by the letter transmitting the same. These errors, we think, were prejudicial, therefore, we reverse the judgment and remand the cause. All concur.